IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EDELMAN FINANCIAL ENGINES, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | )  Case No.: 23-2515-HLT-KGG ) |
| MARINER WEALTH ADVISORS, LLC, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM & ORDER DENYING MOTION TO STAY**

Now before the Court is the "Motion to Stay" filed by Defendant (Doc. 6), in which it argues that the case should be stayed because of four pending arbitrations and another lawsuit "concerning some of the individuals referenced in this case, and the same or similar issues are involved in those proceedings." (Doc. 7, at 1.) Defendant continues that the requested stay would "promote judicial economy and avoid the potential for inconsistent results." (*Id.*) Plaintiffs oppose the motion, arguing that the requested stay, which Plaintiffs characterize as "indefinite," would not promote judicial economy but would instead cause Plaintiffs undue prejudice. (*See generally* Doc. 16.) Having considered the submissions of the parties, Defendant's Motion (Doc. 6) is **DENIED** for the reasons set forth below.

## **FACTUAL BACKGROUND**

Plaintiffs are in the business of financial planning, investment management, and retirement income services with both individual and institutional clients. (Doc. 1, at 2.) Defendant is alleged to be Plaintiffs' "direct competitor." (*Id.*) In the present lawsuit, Plaintiffs bring claims against Defendant for violations of the federal Defend Trade Secrets Act, 18 U.S.C. §1839, the Kansas Uniform Trade Secrets Act, K.S.A. §60-3320, *et seq.*, and common law causes of action for

1

conspiracy to misappropriate trade secrets, tortious interference with contract, tortious interference with business relations and expectations, unfair competition, and defamation. (*See generally* Doc. 1.)

More specifically, Plaintiffs allege they filed this lawsuit to end Defendant's "flagrant and ongoing efforts to misappropriate [Plaintiffs'] trade secrets, tortiously interfere with [Plaintiffs'] contracts and business expectations, defame [Plaintiffs'] reputation, and steal the fruits of [Plaintiffs'] multimillion dollar investments in marketing and client goodwill." (Doc. 16, at 5 (citing Doc. 1, at ¶¶ 2-3).) According to Plaintiffs,

> [Defendant's] strategy is simple: recruit [Plaintiffs'] planners, convince those planners to breach restrictive covenant and confidentiality agreements they executed with [Plaintiffs] – agreements that are substantively identical to contracts [Defendant] has its own planners sign – and use the [Plaintiffs'] trade secret information the planners divulge to poach [Plaintiffs'] clients and divert hundreds of millions in Assets Under Management ('AUM').

(Doc. 16, at 5.) The eight planners referenced in pages 9-49 of Plaintiffs' Complaint were registered investment advisor representatives of Financial Engines Advisors L.L.C. (hereinafter "FEA"), Plaintiffs' California-based affiliate that is an SEC-registered investment adviser. These individuals are Garvey, Azzopardi, Geilfus, Mercer, Borgatti, Horne, McGuire, and Kelly (hereinafter "the departed planners").

Defendant generally denies Plaintiffs' allegations. Defendant references Plaintiffs' "campaign" of filing lawsuits and initiating arbitrations against four of the individuals referenced in the Complaint. (Doc. 7, at 2.) Defendant contends that these actions, which are currently pending in other jurisdictions, are merely an attempt by Plaintiffs to "unlawfully stifle fair competition in the investment advisory services industry." (*Id.*)

According to Defendant, it, along with Plaintiffs and one of the individuals named in the Complaint (Horne), are parties in a related lawsuit, which is "pending – *but stayed at Plaintiffs' and FEA's request in light of the pending arbitration* – in Orange County Superior Court in California (the

2

'California Case')." (*Id.* (referencing Superior Court of the State of California, County of Orange, Case No. 30-2021-01209577-CU-CO-CJC (Exh. 7-1).) That lawsuit seeks declaratory relief regarding choice of law and enforceability of Horne's employment agreement, as well as claims for unfair competition, violations of California labor statutes, and failure to pay. (*Id.*)

Defendant also refers to four pending arbitrations, which concern "some of the individuals referenced in this case, and the same or similar issues are involved in those proceedings." (*Id.*, at 1.) Defendant argues that the pending arbitrations "involve essentially the same factual and legal issues Plaintiffs are now raising against [Defendant]" in this litigation – including

> (a) alleged confidential information and/or trade secrets of Plaintiffs and FEA; (b) the enforceability of restrictive covenants in agreements Plaintiffs are seeking to enforce for the benefit of FEA; (c) whether Plaintiffs and FEA can lawfully prohibit clients from deciding for themselves what is in their best interests when it comes to selecting their financial planner; and (d) alleged damages.

(*Id.*, at 2, 3.) Defendant contends that the purpose of the present lawsuit is not related to Plaintiffs' concern for their proprietary information, but rather is an attempt by Plaintiffs to "send a chilling public message to the marketplace" that employees of Plaintiffs who leave "in accord with industry standards, customs and practices, will be subjected to meritless litigation … ." (*Id.*)

With the present motion, Defendant seeks an Order staying this litigation until these four arbitrations and California lawsuit are resolved. (Doc. 7.) Defendant argues that the stay would "promote judicial economy and avoid the potential for inconsistent results." (*Id.*)

Plaintiffs respond that "a close reading" of Defendant's motion to stay shows that Defendant

> concedes – as it must – that arbitrations are only pending against 'some' of [Plaintiffs' departed employees] (three of eight), that only 'some' of the issues between those arbitrations and this litigation overlap, that [Defendant] is not a party to any of the pending arbitrations, and that [Defendant's] conduct described in the Complaint is not at issue in the arbitrations.

3

(Doc. 16, at 6 (citing brief in support of Defendant's Motion to Stay, Doc. 7 at 3-5)).) Thus, Plaintiffs argue, there would "simply be no significant 'judicial efficiency' in waiting for the results of the arbitrations because the overwhelming majority of factual and legal issues – including all issues concerning five of the Departed Planners not in arbitration and all of [Plaintiffs'] claims against [Defendant] – will still need to be resolved in this Court." (*Id.*, at 6-7.) Plaintiffs argue that the requested stay would cause it undue prejudice "because it would delay [Plaintiffs] from obtaining relief and allow [Defendant] to continue its unlawful conduct with impunity." (*Id.*, at 7.)

## ANALYSIS

### I.   Legal Standards.

"The general rule is that arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." *Pipia v. Rauscher Pierce Refsnes, Inc.*, 714 F. Supp. 501, 503 (D. Kan. 1989) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985) (White, J., concurring), *Chang v. Lin*, 824 F.2d 219, 223 (2d Cir.1987), and *Girard v. Drexel Burnham Lambert, Inc.*, 805 F.2d 607, 611 (5th Cir.1986). "The decision to stay discovery and other pretrial proceedings is firmly vested in the sound discretion of the trial court." *Toney v. Harrod*, No. 15-3209-EFM-TJJ, 2018 WL 5830398, at *1 (D. Kan. Nov. 7, 2018) (citing *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963); *McCoy v. U.S.*, No. 07-2097-CM, 2007 WL 2071770, at *2 (D. Kan. July 16, 2007)).

The decision to stay is incidental to the Court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 1636, 1650, 166 81 L.Ed. 153 (1936). A Court has broad discretion to grant a stay in one case "to abide the proceedings in another [proceeding;]" this is true even in situations wherein the two proceedings involve different parties or different issues. *Id.* (holding that the Court is "unable to assent to the suggestion that before proceedings in

4

one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical."). *See also Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997).  In exercising this discretion, a court "must weigh competing interests and maintain an even balance." *Id.*, at 255.  Any such stay must be kept within the "bounds of moderation." *Id.* at 256.

The Court also has "discretion to stay litigation involving a non-party to an arbitration procedure." *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1518 (10th Cir. 1995); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23, 103 S.Ct. 927, 931, 74 L.Ed.2d 765 (1983) (stating that "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration"). "[C]onsiderations of judicial efficiency" are to be considered in granting such a stay. *Coors*, 51 F.3d at 1518.  A court should also consider whether a stay will "avoid confusion and inconsistent results," "unduly prejudice the parties," or "create undue hardship." *Ronning Eng'g Co. v. Adkins Energy*, No. 04-2096-CM, 2006 WL 2038024, at *1-2 (D. Kan. July 18, 2006) and *Gouger v. Citibank NA*, No. 19-2434-KHV, 2020 WL 1320723, at *3 (D. Kan. March 20, 2020).

That stated, Tenth Circuit has concluded that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).  Further, the general rule that federal litigation and related arbitration(s) should proceed simultaneously is particularly compelling in situations, such as the present one, wherein the party requesting the stay is not a party to the related arbitration(s). *Brahma Group, Inc. v. Ames Construction, Inc.*, No. 15-1538-MSK-KLM, 2015 WL 8308134, at *2 (D. Colo. Dec. 9, 2015).

**II.     Application of Legal Standards.**

As mentioned above, Defendant argues that the present case should be stayed because the outcomes of the other related litigation and arbitrations "may impact Plaintiffs' claims in this lawsuit." (Doc. 7, at 3.)  Defendant continues that "[a]llowing this lawsuit to proceed in parallel with the arbitrations would waste resources and could result in inconsistent findings" while entering the stay requested herein "will not prejudice Plaintiffs in any way." (*Id.*)  Given the above legal standards, the Court will evaluate Defendant's request in the context of concerns for judicial economy, potential for confusion, and prejudice to the non-movants.

### A.     Judicial Economy.

"A stay will promote judicial economy when the issues in arbitration and litigation significantly overlap." *Gouger*, 2020 WL 1320723, at *3 (citing *Ronning*, 2006 WL 2038024, at *1-2). Defendant argues this consideration weighs in favor of a stay because this lawsuit and the pending arbitrations "involve common factual and legal issues." (Doc. 7, at 5.)  According to Defendant,

> Plaintiffs' claims here are premised on [Defendant] having hired the individuals formerly employed by Plaintiffs and affiliated with FEA. [Doc. 1, at ¶¶ 28-204.]  According to Plaintiffs, in recruiting, hiring, and working with the individuals, Defendant has: (a) facilitated an alleged misappropriation of trade secrets (*id.* ¶¶ 211-42), (b) tortiously interfered with contracts and business expectations (*id.* ¶¶ 243-59), (c) unfairly competed (*id.* ¶¶ 260-68), and (d) defamed Plaintiffs (*id.* ¶¶ 269-74).  Central to most of this are Plaintiffs' contentions that the individuals breached their agreements with Plaintiffs, disclosed alleged confidential information or trade secrets of Plaintiffs, and solicited or accepted business from clients who decided to no longer work with Plaintiffs and FEA.  (*Id.* ¶¶ 42, 44, 82, 84, 113, 115, 161, 163.)
>
> Common factual and legal issues abound. For example, to prevail on their tortious interference with contract claim here, Plaintiffs must prove they have enforceable contracts with the individuals.  *See Triolo v. ECRI*, [1997 WL 728251, at *4] (D. Kan. Oct. 29, 1997) ("A claim for tortious interference with a contractual relationship requires the existence of a valid and enforceable contract at the time of the interference between the plaintiff and a third party.") (citation and quotation omitted).  Of course, Plaintiffs have to prove the same thing in the individual arbitrations. *Brandon Steven Motors, LLC v. Landmark Am. Ins. Co.*, 625 F. Supp. 3d 1161, 1168-69 (D. Kan. 2022).  The arbitrations, therefore, will necessarily adjudicate a fundamental issue in this action.

6

(Doc. 7, at 5-6.)

Plaintiffs do not agree, contending that Defendant "grossly exaggerates the extent to which the litigation and the arbitrations overlap." (Doc. 16, at 16.) As an initial argument, Plaintiffs point out that the arbitrations only involve three of the eight former employees referenced in the Complaint. Plaintiffs contend that their claims against Defendant "indisputably would continue in this Court with regard to Mariner's conduct involving Garvey, Azzopardi, Geilfus, Mercer and Borgatti, even if there are adverse decisions in one or more of the arbitrations involving Horne, McGuire and Kelly." (*Id.*, at 16.)

Plaintiffs continue that Defendant incorrectly argues "the enforceability of the restrictive covenant agreements Horne, Kelly, and McGuire signed are at issue in the arbitrations and that [Plaintiffs] must also prove enforceability here to prevail on its tortious interference with contract claim." (*Id.*) According to Plaintiffs, Defendant's position "ignores the fact" that Plaintiffs base their

> tortious interference with contract claim on [Defendant's] interference with the Departed Planners' confidentiality agreements, the enforceability of which is not disputed in the arbitrations. *See* [Doc. 1, at ¶ 244; *see also* Doc. 16-1, at ¶ 13.] Thus, [Plaintiffs'] tortious interference with contract claim concerning the arbitrating Departed Planners would still proceed in this Court, even if there were adverse decisions with arguable preclusive effect concerning the restrictive covenant agreements. Moreover, issues concerning the enforceability of three of the eight planner's restrictive covenant agreements have no bearing on [Plaintiffs'] tortious interference with business relations and expectations claim, which is not dependent on the existence of an enforceable contract, or on [Plaintiffs'] trade secret claims against [Defendant]. [Doc. 1, at ¶ 253-259.] There similarly is no commonality between [Plaintiffs'] defamation claim and any claim or issue in the arbitrations.

(Doc. 16, at 16-17.) In response, Defendant argues that in the arbitrations, "each of the planners have disputed that they breached any confidentiality obligations, and McGuire and Kelly dispute that they misappropriated trade secrets." (Doc. 17, at 6.) Thus, according to Defendant, "the overlap

7

between the legal and factual issues is much broader than just the enforceability of restrictive covenants." (*Id.*)

Plaintiffs state that as to the "few questions between the litigation and arbitrations that do overlap, [Defendant] is not a party to the arbitrations and therefore concedes that it "would not be bound by the outcomes therein … ." (*Id.*, at 17 (citing Doc. 7, at 8.)  As cited above, however, there is Supreme Court and Tenth Circuit authority holding that a court has "discretion to stay litigation involving a non-party to an arbitration procedure." *Coors*, 51 F.3d at 1518; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at n.23 (1983) (stating that "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration").  That stated, the Court agrees with Plaintiff that the overlap in the factual and legal issues between the present litigation and the pending arbitrations is insufficient to justify a stay.  As indicated above, Defendant characterizes the facts and legal issues in the arbitrations as

> (a) alleged confidential information and/or trade secrets of Plaintiffs and FEA; (b) the enforceability of restrictive covenants in agreements Plaintiffs are seeking to enforce for the benefit of FEA; (c) whether Plaintiffs and FEA can lawfully prohibit clients from deciding for themselves what is in their best interests when it comes to selecting their financial planner; and (d) damages.

(Doc. 7, at 2-3.)  The present lawsuit, however, brings claims against Defendant for violations of the federal Defend Trade Secrets Act, 18 U.S.C. §1839, the Kansas Uniform Trade Secrets Act, K.S.A. §60-3320, *et seq.*, and common law causes of action for conspiracy to misappropriate trade secrets, tortious interference with contract, tortious interference with business relations and expectations, unfair competition, and defamation.  (*See generally* Doc. 1.)

While there is some overlap between this lawsuit and the arbitrations – particularly relating to the existence of trade secrets and restrictive employment covenants – Defendant has not satisfied the Court that this overlap is significant enough to justify an indefinite stay for the sake of judicial

8

efficiency. *Gouger*, 2020 WL 1320723, at *3 (holding that a stay "will promote judicial economy when the issues in arbitration and litigation significantly overlap") (citing *Ronning*, 2006 WL 2038024, at *1-2).

Additionally, the facts in *Gouger* are clearly distinguishable. Therein, plaintiff brought claims against three defendants for alleged violations of the Fair Credit Reporting Act. 15 U.S.C. §1681, et seq. One of the defendants moved to compel arbitration of the plaintiff's claims against it. The stay was sought by the two remaining *Gouger* defendants, who argued that the arbitration would "shed light" on common issues, mitigate the risk of inconsistent outcomes, reduce the parties' expense, and the stay would be of limited in duration. Although Defendant herein raises many similar arguments to justify the requested stay, the factual scenario in *Gouger* is clearly distinguishable from the facts herein as the individuals who are parties to the arbitrations are merely referenced in the present Complaint and were never parties to this litigation.

Further, Defendant has not adequately explained how the arbitrations will have a preclusive effect on these proceedings, but merely makes the unsupported conclusion that the arbitrations "will almost certainly have a preclusive effect on Plaintiffs for purposes of this case." (Doc. 7, at 6.) Defendant also asserts that the arbitrations "will necessarily adjudicate a fundamental issue in this action" because if Plaintiffs' employment agreements are found to be invalid or to have been breached, "then Plaintiffs' tortious interference claim [herein] must fail." (*Id.*) Defendant continues that the arbitrations

> involve claims based upon alleged misuse of Plaintiffs' confidential information, and … alleged misappropriation of trade secrets. If Plaintiffs do not prove the elements of those claims in the arbitrations, then Plaintiffs' similar claims here must fail. And, if Plaintiffs fail to prove causation and/or damages in the arbitrations, then likewise, those outcomes will almost certainly have preclusive effect on Plaintiffs for purposes of this case. If Plaintiffs do recover compensatory damages in any of the arbitrations, then of course there cannot be a double recovery of same through this action. In sum, it would be inefficient for the parties here to engage in expensive and

> burdensome litigation when key factual and other issues will be decided in the arbitrations.

(*Id.*, at 6-7.)

Defendant cannot establish that the arbitrations would have an actual preclusive effect on the present litigation. It is well-established that it would be appropriate for the Court to enter the requested stay if the arbitrator's findings on issues and claims will have a preclusive effect on nonarbitrable claims. *Gouger*, 2020 WL 1320723, at *2 (citing *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2004)). Issue preclusion, also known as collateral estoppel, "prevents a court from reconsidering an issue previously decided in a prior action if (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2004); *see also B-S Steel v. Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006).

Defendant clearly has not established that the issues presented in the arbitration are "identical" to the issues herein. Further, any such issues have not yet been decided in the arbitrations, which are on-going. Perhaps most tellingly, Defendant specifically concedes that it "is not a party to the arbitrations, and thus would not be bound by outcomes therein … ." (Doc. 7, at 8.) *See Brahma Group*, 2015 WL 8308134, at *2 (holding that if the plaintiff was "a party to the arbitration there might be justification for a stay of this matter, but it is not clear that any issue determined through arbitration will be determinative in this case or have any preclusive effect on [the plaintiff's] claims."). The Court thus finds that this factor weighs against the requested stay.

### B.     Avoidance of Confusion and Inconsistent Results.

Defendant next raises the concern of potential inconsistent results between this litigation and one or more of the pending arbitrations. Defendant points out that the agreements at issue

"could be found enforceable in one forum, but unenforceable in another," an "individual may be found to have breached an agreement in one case, but in another case, he may be found not to have breached," or a trier of fact in one proceeding "could find that Plaintiffs have confidential information and/or trade secrets, while another finds that they do not." (Doc. 7, at 7-8.) Similarly, Plaintiffs could prove damages from particular conduct in one case, but not in another. Defendant does not, however, discuss how such inconsistent results would impact this litigation.

Defendant contends that even thought it is not party to the arbitrations, and therefore admittedly not bound by the results, this

> does not change the need to avoid confusion and inconsistent results. That is because losses by Plaintiffs in one or more of the arbitrations would have preclusive impact on them. *See Gouger*, [2020 WL 1320723, at *2] (granting stay and noting that "issue preclusion will not apply to the [non-arbitrating defendants], it may apply to plaintiff"); *American Home Assur. Co.*, 629 F.2d 961, 964 (4th Cir. 1980) ("While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless mitigate in favor of staying the entire action.").

(Doc. 7, at 8.)

Plaintiffs largely relies on the argument that "[t]here is also no risk of inconsistent decisions with respect to most issues and claims here because they are not being considered in the arbitrations." (Doc. 16, at 7.) The Court agrees. While there is some actual overlap, this relates to only a small portion of the issues and claims herein, as discussed in the preceding section. The Court finds that this consideration thus weighs against the requested stay.

### C. Prejudice or Undue Hardship.

As indicated above, in deciding whether to enter a stay, a court should consider whether doing so will "create undue hardship" on the non-moving party. *Ronning*, 2006 WL 2038024, at *1. Defendant argues that in this instance, rather than causing prejudice or undue hardship to Plaintiffs, a stay would actually be beneficial to them "insofar as they will avoid undue time and expense by

litigating the same issues in multiple cases." (Doc. 7, at 8 (citing *Gouger*, 2020 WL 1320723, at *4 (a stay "creates the only possibility of an aggregate reduction in litigation costs.").) Defendant also points to Plaintiffs' delay in bringing the present action as evidence that a stay would not prejudice Plaintiffs. According to Defendants, "[t]his delay by Plaintiffs is even more telling as to their true motives here, given their contention about confidential information and trade secrets allegedly being as stake." (*Id.*)

Plaintiffs counter that they would be "greatly prejudice[d]" by the proposed stay, wherein Defendant is "proposing a complete stay of all discovery and other proceedings – even concerning facts and issues not present in the arbitrations – until there are final judgments in all three pending matters." (Doc. 16, at 13.) Plaintiffs describe such a stay as "indefinite." According to Plaintiffs, this would result in "inherent prejudice to [Plaintiffs] from being forced to wait indefinitely to begin proceedings in this case, including delaying the date of judgment and a permanent injunction, the potential loss of relevant documentary evidence from [Defendant] and third parties, fading memories and unavailability of witnesses." (*Id.*, at 14.)

Defendant replies that the requested stay would not be "indefinite" because the mediations for Horne, McGuire, and Kelly are scheduled to occur between April – June 2024, with any award(s) required to be issued no later than 30 days after the end of the arbitration. Although the arbitrations are planned to unfold over the next several months, the Court has significant doubts that they will actually occur and be concluded as currently scheduled.

Plaintiffs also contend that granting the stay "would allow [Defendant] to continue its unlawful conduct with impunity, thus subjecting [Plaintiffs] to grievous additional harm." (Doc. 16, at 14.) According to Plaintiffs, this is particularly troubling when the case at bar involves allegations of "an *ongoing* tortious scheme by a non-arbitrating party; it does not involve a singular dispute involving arbitrable and non-arbitrable claims that has come to rest, which is the context of each of

12

the cases that [Defendant] cites in support of a stay." (*Id.* (emphasis in original) (comparing *Braham Group*, *supra*, relied upon by Plaintiffs to *e.g. Gouger* and *Ronning*, *supra*, relied upon by Defendant).) The Court agrees.

All things considered, the Court finds that Defendant has not established that the proposed stay is appropriate. Staying this case would not promote judicial economy and the impact of potentially inconsistent results is highly speculative at this juncture. Plaintiffs have established that they would be unduly prejudiced by the entry of an indefinite stay. The "imposition of a stay would merely delay [Plaintiffs] in asserting [their] right to pursue [their] claims." *Brahma Group*, 2015 WL 8308134, at *2. Defendant's motion is **DENIED**.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Stay (Doc. 6) is **DENIED**. Defendant is directed to file its responsive pleading within thirty (30) days of the date of this Order.

IT IS SO ORDERED.

Dated this 16th day of February, 2024, at Wichita, Kansas.

/S/ BROOKS G. SEVERSON
Brooks G. Severson
U.S. MAGISTRATE JUDGE