UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EDELMAN FINANCIAL ENGINES, LLC and EDELMAN FINANCIAL ENGINES, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> MARINER WEALTH ADVISORS LLC, <br><br> Defendant. | Case No. 23-2515-HLT-BGS |

### MEMORANDUM AND ORDER DENYING
### MOTION FOR PROTECTIVE ORDER

The matter come before the Court on Defendant Mariner Wealth Advisors LLC's (hereinafter "Mariner" or "Defendant") motion for a protective order regarding redactions to various documents produced pursuant to discovery requests. Doc. 63. For the reasons stated herein, the Court **DENIES** Mariner's motion for a protective order.

**I. Background**

Plaintiffs Edelman Financial Engines, LLC and Edelman Financial Engines, L.P. (hereinafter "Edelman" or "Plaintiffs") provide financial planning services. The financial planning industry is highly competitive, and the ability to acquire and retain clients is very important to a company's competitive advantage. Doc. 1, at 5. Typically, financial planners are expected to generate client leads themselves. However, Edelman is unique in that they handle the lead generation for its planners. *Id.*, at 2. Edelman assigns each prospective client to one of its financial planners, who is then tasked with developing the client relationship. *Id.*, at 6.

Edelman spends millions of dollars annually to identify and market to prospective individuals who may be open to Edelman's services. Ideally, by handling the lead generation, Edelman is allowing its planners to focus more of their time on financial planning instead of

1

generating leads.  Edelman alleges that the

> client leads, information, referral sources, and financial analyses that result from these marketing efforts are confidential information belonging to Edelman and are not publicly available.  The resulting data on current and prospective clients, their ability to invest, investment histories, investment positions applied to client portfolios, actual fees charged to clients, and actual fees paid to planners and referral sources are among Edelman's most valuable trade secrets and give it a competitive advantage in the industry.

*Id*, at 2.  The client lists and client information are procured at great cost, and as a result, contain competitively valuable and sensitive information.  Due to the financial planners' access to confidential and competitively sensitive information, they are required to sign employment agreements to maintain the confidentiality of Edelman's trade secrets and proprietary information. *Id.*, at 8.  If Edelman's trade secrets or otherwise proprietary information were to be used by competitors, it would undermine its competitive advantage and investments it has made in its client relationships.  *Id.*, at 7.

The Defendant in this case is Mariner, a financial planning firm who is a direct competitor of Edelman.  Mariner "is a relatively new company and has significantly fewer resources to devote to research, marketing, and client development." *Id.*, at 2.  Edelman alleges that Mariner is intent on "free-riding" off Edelman's enormous marketing investments and has engaged in a protracted "campaign to hire away high-performing Edelman financial planners and incentivize them to disclose the proprietary client information Edelman has spent decades curating." *Id.* (internal parenthetical omitted).  The complaint further alleges that Mariner knowingly procured multiple breaches of Edelman's employment agreements which include confidentiality clauses.  Mariner is alleged to have caused the departure of at least 851 Edelman clients representing over $621 million in Assets Under Management ("AUM").  *Id.*, at 3.

The complaint alleges that at least 10 former Edelman financial planners left Edelman to work for Mariner, but specifically identifies and discusses the departure of 8 financial planners—

2

known collectively has "the Departed Edelman Planners".[1] *Id.*, at 2-3. The Departed Edelman Planners left Edelman between 2021 and 2023. Mariner allegedly used high pressure tactics and made false statements to acquire the former Edelman planners. *Id.*, at 3. Each of the departed planners had access to and/or received Edelman trade secrets and information relating to Edelman's investment strategies and highly confidential information. The departed planners entered into contracts with Edelman which contained restrictive covenants. The restrictive covenants included non-solicitation clauses that prohibited the disclosure of confidential information as well as agreements to not initiate contact with or engage in business of a similar nature. These restrictions would last for 15 months after the end of the planner's employment with Edelman. *See id.*, at 11, 15, 20, 25, 26, 28, 37, 39.

Edelman alleges that, upon information and belief, Mariner asked for and was provided copies of the employment agreements with the departed planners, including the non-solicitation agreements. After receiving the employment agreements, Mariner provided advice to the departed planners on how to best defend a lawsuit from Edelman for breach of the non-solicitation agreement. *Id.*, at 11, 16, 20, 28, 33, 39, 43, 47. As part of Mariner's recruitment efforts, it allegedly asked about each planner's clients, including seeking information about their AUM. Based on the confidential information received, Mariner was able to put together compensation packages that were tailored toward each planner and aimed to solicit the Edelman clients each planner was servicing. *Id.* Edelman alleges that Mariner and the departed Edelman planners conspired to provide Edelman's trade secrets and proprietary business information to Mariner. *Id.*, at 12, 16, 21, 29, 34, 39, 44, 48. The departed planners who were recruited by Mariner allegedly, with Mariner's assistance, recreated a list of Edelman clients and provided that information to Mariner. Edelman

---

[1]These financial planners are Michael Horne, Joseph Azzopardi, Kevin Garvey, Brian McGuire, John Geilfus, Seth Kelly, Jacob Mercer, and Michael Borgatti.

alleges that client lists are among its most valuable trade secrets and its misappropriation constitutes a breach of the non-solicitation agreements. Mariner received this information in breach of the restrictive covenants and used that information to put together competitive compensation packages. Edelman alleges that the departed planners, with Mariner's knowledge and assistance, initiated contact with their Edelman clients and solicited their business in breach of their employment agreements. *Id.*, at 13, 17, 22, 30, 35, 40, 45, 49. The complaint contains some allegations unique to specific planners but are generally not relevant to the present motion.

Edelman alleges that "Mariner's efforts to misappropriate Edelman's trade secrets and poach its Clients and AUM is ongoing."—an issue that has been persistent in this case *Id.*, at 49. Edelman brought 7 counts against Mariner:

- Count 1: Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1839.

- Count II: Violation of the Kansas Uniform Trade Secrets Act, K.S.A. §§ 60-3320-3330.

- Count III: Conspiracy to Misappropriate Trade Secrets.

- Count IV: Tortious Inference with Contract.

- Count V: Tortious Interference with Business Relations and Expectations.

- Count VI: Unfair Competition.

- Count VII: Defamation.

On March 18, 2024, Mariner moved to dismiss the claims for misappropriation, conspiracy, and defamation. *See* Doc. 19. The District Judge denied the motion as to the misappropriation and conspiracy claims but granted the motion as to the defamation claim. *See* Doc. 35. As such, there are currently six active counts in the case.

Numerous discovery disputes have arisen over the course of this case. To date, the Court has conducted five pre-motion discovery conference in under 4 months. *See* Docs. 43, 48, 53, 58, 67. The pre-motion discovery conferences have been generally productive. In the first pre-motion

4

discovery conference on August 22, 2024, the Court addressed numerous disputes concerning Edelman's first set of interrogatories and first set for requests for production. In relevant part, the Court and parties discussed the relevance of Edelman planners that were recruited by Mariner, but ultimately did not join Mariner.[2] As a compromise, Edelman agreed to serve amended discovery requests—narrower in scope—while the Defendant agreed to serve new responses to the amended discovery requests.

On October 3, 2024, Mariner served documents in response to the amended discovery requests. Mariner also objected to amended Request No. 8 and amended Request No. 12. Generally, amended Request No. 8 sought all communications relating to any effort by Mariner to recruit any Edelman employee between January 1, 2019, and the present, in which the recruited Edelman employee conveyed Edelman documents or information to Mariner. *See* Doc. 64-2, at 4. Mariner objected on several grounds, including relevance and confidentiality/privacy. Amended Request No. 12 sought all documents and communications relating to any efforts Mariner considered or took to build AUM and fee revenue by recruiting Edelman financial advisors, financial planners or other professionals. *See* Doc. 64-2, at 6-7. Mariner objected on grounds such as relevance, undue burden, and lack of temporal limitation.

In an effort to compromise, Mariner agreed to produce documents and communications responsive to the discovery requests. The document production contained numerous redactions to protect the identity of certain individuals. Plaintiffs characterized the redactions as falling into 3 categories: (1) redactions concerning Edelman planners recruited by Mariner but did not join Mariner; (2) redactions concerning planners unrelated to Edelman that were recruited by Mariner; and (3) inadvertent redactions. As result of these unilateral redactions, the parties requested another

---

[2] Given the informal nature of the Rule 37.1(a) discovery conferences, the Court will not go into the specific details of what was said during the conference.

pre-motion conference. Despite good-faith efforts, the parties were unable to resolve the issues and the Court set a briefing schedule. Mariner filed its motion for a protective on November 22, 2024. Briefing is now complete, and the Court is prepared to rule.

## II.   Legal Standard

Protective orders are governed by Fed. R. Civ. P. 26(c), which gives the court, for good cause shown, the authority to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)(1) also permits a court to issue a protective order authorizing redactions. *Ritchie v. Wal-Mart Stores E., L.P.*, No. 19-4067-SAC-ADM, 2020 WL 5369392, at *1. (D. Kan. Sept. 8, 2020). The burden is on the producing party to show the propriety of the redactions. *Id.*, at *2. "The 'good cause' standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (internal quotation marks omitted). A party may demonstrate good cause to support "narrowly tailored redactions of limited information" that is not relevant to the issues in the case "by establishing specific, significant competitive harm that would result from disclosure." *Ritchie*, 2020 WL 5369392, at *2.

Generally, parties may not unilaterally redact information from documents it produces because they deem the information to be irrelevant or non-responsive. *Ritchie*, 2020 WL 5369392, at *2. "Federal Rule of Civil Procedure 34 requires a party to produce or permit inspection of responsive *documents*, not just relevant information contained in those documents." *Id.*, at *1 (emphasis in original) (citing *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2010 WL 4792388, at *5 (D. Kan. Nov. 17, 2010)). Allowing unilateral redactions "would invite additional discovery disputes and undermine Fed. R. Civ. P. 1's directive to construe the Rules to advance the just, speedy, and inexpensive determination of cases." *Fish v. Kobach*, No. 16-2105-JAR, 2017 WL 1373882, at *7 (D. Kan. Apr. 17, 2017). In most cases, redactions are unnecessary and disruptive to

the case because parties are usually not harmed by producing irrelevant or sensitive information already subject to a protective order. *In Re Winter Storm Uri Natural Gas Litigation*, No. 24-1005-DDC-ADM, 2025 WL 18678, at *2 (D. Kan. Jan. 2, 2025).

## III. Analysis

Mariner raises two issues in its motion for a protective order. First, it argues that the discovery requests in dispute seek irrelevant information and seek documents otherwise outside the scope of discovery. Second, it argues that even if the discovery requests seek relevant documents, the redactions should nonetheless be authorized because good cause exists. The Court will address each issue beginning with relevance.

### a. The Discovery Requests are Relevant.

Rule 26(b) of the Federal Rules of Civil Procedure govern the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). As such, for the information to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978). *See also Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

Mariner argues that the documents, and the information it redacted, are not relevant to any of Plaintiffs' claims.[3] In support, it contends that (1) Edelman never alleges that Mariner engaged in

---

[3] Although Mariner produced documents responsive to the discovery requests, it maintains its objections based on relevance. Mariner states that it produced the documents as a means of compromise to resolve the discovery dispute. Now that the dispute has come before the Court, it reasserts its objection that the documents are not relevant. The Court will consider the objections herein.

a "pattern and practice" of improper recruiting activities; (2) "pattern and practice" allegations, to the extent they are pled, have no application to Plaintiffs' claims; and (3) the redactions, which relate to non-party candidates, impute no liability on Mariner and no damages arose from the recruiting activities of these candidates. Doc. 64, at 4-6.

Here, the Court finds that the discovery requests, and the documents produced, are relevant. Edelman brings claims against Mariner for violations of federal and state trade secret acts, conspiracy to misappropriate trade secrets, tortious interference with contracts, tortious interference with business relations and expectations, and unfair competition. The requests at issue generally seek documents and communications in which a recruited Edelman employee provided Mariner with Edelman's trade secrets and/or confidential documents. The documents bear on these matters because Mariner's recruited candidates could have exchanged trade secrets, employment contracts, client lists, or other highly sensitive information with Mariner, even though a deal was never reached with those candidates.

While the complaint does not use the word "pattern and practice," it does allege that Mariner engaged in a multi-year campaign to hire away Edelman's financial planners and then incentivized them to disclose trade secrets and client information. Doc. 1, at 2. Further, establishing a pattern or systematic campaign of poaching Edelman planners may bear on Mariner's intent and level of knowledge which, in turn, may bear on the claims and defenses in the case, as well as the amount of damages sustained. Indeed, the complaint alleges that Mariner *knowingly* procured multiple breaches of Edelman's employment agreements and used that information to put together competitive compensation packages.

Mariner also contends that the documents have no relevance to the damages or Mariner's liability. The Court disagrees. Mariner allegedly recruited Edelman planners and helped them recreate a list of Edelman's clients, and then used that information for their own benefit. The

8

documents may reveal what documents were exchanged, how Mariner intended to use them, and whether there was an effort to misappropriate trade secrets. As such, the Court finds that the discovery requests and documents are relevant and will move on to the issue of whether the redactions are proper.

### b. The Redactions are Improper.

As previously discussed, unilateral redactions are typically improper, and a party may not redact information that they deem to be irrelevant. *Ritchie*, 2020 WL 5369392, at *2. Mariner raises two reasons why, in this instance, the redactions should be allowed. First, it argues that the redacted versions of the documents sufficiently provide Plaintiffs with the information they seek. Second, it argues that its interests outweigh any potential relevance of the identities of the non-party candidates. The Court will address each argument in turn.

### i. The Redactions are Not Narrowly Tailored

The first step in determining whether there is good cause to allow the redactions is to consider whether the redactions are narrowly tailored to cover only irrelevant information. *In Re Winter Storm Uri Natural Gas Litigation*, 2025 WL 18678, at *3. Mariner argues that the documents, in their redacted form, are fully responsive to the discovery requests and disclose the extent to which any recruited candidate provided trade secrets to Mariner.

Here, the redactions are extensive and cover much more than the identities of the non-party candidates.[4] Mariner argues that such redactions are necessary to protect the identity of the non-party candidates and Edelman simply does not need to know the information they chose to redact.

---

[4]The Court notes that the briefing, and exhibits attached thereto, do not include the redacted documents, except for Exhibit C to Defendant's motion which includes a redacted confidentiality agreement. *See* Doc. 64-3, at 5-10. However, the Court has reviewed other redacted documents which were provided as part of the pre-motion process. Those documents include email chains, running notes, and emails containing a week's priorities and objectives. The Court considered those documents to provide more context for the redactions.

The Court is not convinced that the redactions are narrowly tailored. Part of the problem is that Mariner has unilaterally "scrub[ed] responsive documents for non-responsive information." *HR Tech., Inc.*, 2010 WL 4792388, at *5 (citing *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-CV-555, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008)). Permitting Mariner to use their sole judgment to redact and scrub information from relevant documents is not what is contemplated under Rule 34. *Id.* It is clear that the redacted documents redact much more than just the names of the non-party candidates. They also redact additional information that Mariner believes may effectively reveal the non-party candidates' identities. In some instances, it leaves the entire document unintelligible. As a result, the Court is unable to find that the redactions are narrowly tailored and only target irrelevant information.

### ii.  Mariner Does Not Establish a Specific, Competitive Harm

Next, Mariner argues that its interests outweigh the documents' relevance. To carry that burden, Mariner must establish a specific, competitive harm. *In Re Winter Storm Uri Natural Gas Litigation*, 2025 WL 18678, at *3-4. When establishing competitive harm, the party moving for the protective order must first show that the redacted information is "a trade secret or other confidential research, development, or commercial information." *Ritchie*, 2020 WL 5369392, at *3. Next, the movant must show that any disclosure of the information would be harmful. *Id.* To make that showing, Mariner must demonstrate that disclosure would "result in a clearly defined and very serious injury, such as showing the competitive harm that would befall it by virtue of the disclosure of the trade secrets or other highly-confidential proprietary information." *Id.* (citing *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL-JPO, 2017 WL 386835, at *2 (D. Kan. Jan. 27, 2017)). "To establish such an injury under the good-cause standard for a protective order, a party must make 'a particular and specific demonstration of fact, as distinguished from stereotyped and

conclusory statements.'" *In Re Winter Storm Uri Natural Gas Litigation*, 2025 WL 18678, at *3 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

Defendant contends that the redactions are necessary to protect the non-party candidates' identities, Mariner would suffer competitive harm as a result of disclosure, and the parties' agreed upon protective order is insufficient to address the privacy concerns. While the Court understands why Mariner is adamant about protecting the non-party candidates' identities, it does not agree with its arguments that the redactions are warranted.

First, the Court has doubts as to whether the redacted information is of such a category that warrant protection by way of unilateral redaction. *See, e.g.*, *Ritchie*, 2020 WL 5369392, at *3 (stating that a party seeking a protective order to authorize redactions must establish that the information is a trade secret or confidential research, development, or commercial information); *In Re Winter Storm Uri Natural Gas Litigation*, 2025 WL 18678, at *3 (same). *See also In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009) (stating that the party seeking a protective order must establish that the information is a trade secret). The redacted information in this case concerns the identities of the non-party candidates that Mariner previously recruited, or information Mariner believes would lead to those identities being revealed.

Mariner does not point to any case law which indicates that identities of non-parties are categories of information which warrant redaction. Instead, Mariner relies on Rule 26's language authorizing a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). However, subsection (G) provides that a Court may issue a protective order requiring that a trade secret or other confidential research, or commercial information not be revealed or revealed only in a specified way. Fed. R. Civ. P. 26(c)(1)(G). *See also Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 5057482 (D. Kan. Sept. 2, 2020) (applying the Rule 26(c)(1)(G) standard to a motion for a protective

11

order seeking redactions). Courts in this district have found that unilateral redactions generally need to contain trade secrets or other confidential research which may result in serious competitive harm if disclosed. *See Ritchie*, 2020 WL 5369392, at *3; *In Re Winter Storm Uri Natural Gas Litigation*, 2025 WL 18678, at *3. As such, the Court has reservations that non-party identities are a category of information that warrant redaction.

Second, the Court does not find that Mariner has established a specific, competitive harm. The competitive harm that Mariner alleges is that it "relies on the confidentiality of its recruiting process to evaluate potential employees." Doc. 64, at 8. It further contends that disclosure could chill future candidates from pursuing a career with Mariner if their identity is at risk of being disclosed in future litigation. The Court is unpersuaded and finds its objections to be speculative. The disclosure of the non-party candidates' names is not likely to imperil Mariner's confidential recruiting process any more than what is already disclosed. The Court is not convinced that the names of third parties would divulge confidential recruitment processes. Further, the Court is similarly unpersuaded that future recruits may be discouraged from applying. The allegation from Edelman is that some of its employees illegally, and in breach of their employment contract, exchanged confidential business information and trade secrets with Mariner. This is a narrow slate of current and former Edelman employees which are generally not applicable to the recruiting pool at large.

Mariner further argues that disclosure of the non-party candidates is an undue burden because Mariner may only disclose the identities of the non-party candidates if it either (1) obtains prior written approval from those candidates or (2) provides them with prior notice of a court order compelling disclosure in order to provide them with an opportunity to seek a protective order or other appropriate remedy. The Court understands Mariner's concerns, but its dealings and contracts with third parties who are not parties to this lawsuit does not change the analysis. Moreover, the

12

alleged undue burden is not Mariner's but the non-party candidates' burden.[5] Mariner is unable to establish its own undue burden.

Lastly, Mariner argues that an attorneys' eyes only ("AEO") designation pursuant to the agreed upon protective order does not adequately address its concerns. It argues that an AEO designation would not protect the non-party candidates from the burden of complying with the non-disclosure agreement and that Plaintiffs' in-house counsel would still be able to view the documents. The Court does not share the same concerns as Mariner. Regarding its argument that disclosure under an AEO designation would still trigger its obligations under the non-disclosure agreement, the Court has already addressed that argument. Mariner's obligations related to its contracts with non-parties does not have a bearing on the Court's analysis. Mariner freely entered into those agreements and may not then use those contractual obligations as a means to argue undue burden.

The protective order provides that any document with an AEO designation "may only be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals." Doc. 32, at 6. It also has a very specific list of individuals who may view documents designated as AEO. Edelman's non-lawyer personnel would not have access to such information, and it would only be able to be used for purposes relating to prosecuting this case. Edelman's attorneys would not be able to disseminate that information within Edelman or otherwise use that information to "out" the employees. Accordingly, the Court finds that the parties' agreed upon protective order sufficiently protects Mariners' interests. The Court further finds that an AEO designation is appropriate in this matter.

---

[5] While the non-party candidates are free to file a motion or seek another appropriate remedy, it cautions that the Court's analysis and opinion is very unlikely to change. The Court has fully considered Mariner's brief and the circumstances in their totality. Accordingly, additional motions seeking reversal of its decision are unlikely to be successful.

In sum, the Court has considered each of Mariner's arguments in support of its proposed redactions and concludes that the redactions are not proper. Mariner has not met its burden to show that the redacted information is so highly proprietary or sensitive that the redactions are warranted despite the availability of the AEO provisions in the protective order. *In Re Winter Storm Uri Natural Gas Litigation*, 2025 WL 18678, at *3 (reaching same conclusion). Accordingly, Mariner has not established good cause for a protective order under Rule 26(c).

### c. Mariner's Alternative Argument

Mariner lastly pursues an alternative argument in which it suggests the Court could sustain Mariner's objections and approve the redactions but require the parties to work out an alternative form of disclosure such as by stipulation or interrogatory. However, its proposal presents similar problems and invites further disputes, and are in any event moot. The Court has overruled Mariner's objections and found that the redactions are improper. Therefore, the Court need not address Mariner's proposal in any further detail.

## IV. Conclusion

In conclusion, the Court finds that the discovery requests are relevant and that the redactions are improper. Mariner must produce all the documents, in unredacted form, by February 4, 2025.

**IT THEREFORE ORDERED** that Defendant's motion for a protective order, Doc. 63, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant must produce the documents without redactions by **February 4, 2025**.

**IT IS FURTHER ORDERED** that Defendant may designate the documents as AEO when producing the documents.

**IT IS SO ORDERED.**

Dated January 21, 2025, at Wichita, Kansas.

/s/ B<small>ROOKS</small> G. S<small>EVERSON</small>
Brooks G. Severson
United States Magistrate Judge