UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDELMAN FINANCIAL ENGINES, LLC and
EDELMAN FINANCIAL ENGINES, L.P.,

      Plaintiffs,

      v.

MARINER WEALTH ADVISORS LLC,

      Defendant.

Case No. 23-2515-HLT-BGS

## MEMORANDUM AND ORDER GRANTING MOTION TO COMPEL

The matter comes before the Court on Defendant Mariner Wealth Advisors LLC's (hereinafter "Mariner" or "Defendant") motion to compel. Doc. 100. Plaintiffs Edelman Financial Engines, LLC and Edelman Financial Engines, L.P. (hereinafter "Edelman" or "Plaintiffs") oppose the motion arguing that Mariner failed to establish that the discovery requests are relevant to any claim in this case.[1] Doc. 102. For the reasons stated below, the motion is granted.

**I.   Background**

The factual background of this case has been adequately summarized in several previous court orders. *See* Docs. 18, 35, 80. As such, the Court will not repeat itself herein and will only provide the background information that is relevant to the present dispute. There are currently six active counts in the case:

- Count I: Defend Trade Secrets Act, 18 U.S.C. § 1839

---

[1] Edelman's brief violates this Court's Local Rules. "Principal briefs in support of, or in response to, discovery-related motions must not exceed 10 pages and replies must not exceed 3 pages." D. Kan. Rule 7.1(d)(1). Edelman's brief is nearly 12 pages, and they did not seek leave to exceed the page limitation prescribed by Local Rule. Many judges in this District have stricken briefs or disregarded the excess pages in this situation. However, in its discretion, the Court declines to do so here. The Court warns counsel to be more attentive to the Local Rules. Motions for summary judgment will be due shortly, and the District Judge may strike a brief that exceeds the applicable page limitations without leave of court.

1

- Count II: Kansas Uniform Trade Secrets Act, K.S.A. §§ 60-3320-3330

- Count III: Conspiracy to Misappropriate Trade Secrets

- Count IV: Tortious Interference with Contract

- Count V: Tortious Interference with Business Relations and Expectations

- Count VI: Unfair Competition

*See generally* Doc. 105.

On April 25, 2025, Mariner served its Second Set of Requests for Production ("RFP"). Doc. 88. Edelman served their Responses and Objections to the discovery requests on May 23, 2025. Doc. 92. After meeting and conferring regarding Edelman's objections, the parties' requested a pre-motion conference with the Court. Initially, the dispute pertained to RFP Nos. 2 and 3. However, after the pre-motion conference with the Court, RFP No. 2 is no longer in dispute and the sole discovery request at issue is RFP No. 3 which provides:

> **Request for Production No. 3**: For the period January 1, 2020 to present, copies of all complaints, counterclaims, statements of claim in arbitration, counter-statements of claim in arbitration, and letters by or from either of the Plaintiffs or Financial Engines wherein either of the Plaintiffs or Financial Engines have alleged or contended that a former advisor of Plaintiffs (excepting the Advisors) has violated a restrictive covenant and/or misappropriated a trade secret and/or confidential information of Plaintiffs, and (a) to the extent any such claim was tried to conclusion in whole or in part, a copy of the judgment or award; and (b) to the extent any such claim was settled, a copy of the settlement agreement.

Edelman responded indicating that it will not produce any document related to the request:

> **Response to Request for Production No. 3**: Edelman objects to this Request as overbroad, unduly burdensome, and grossly disproportionate to the needs of this case because such Documents are outside the scope of the issues in this litigation and would be immaterial to resolving any of the disputes presented. Such information is not relevant to any party's claims or defenses. Any speculative benefit Defendant might hope to gain from discovering such information is outweighed by the burden and expense Edelman would incur in collecting and producing these materials. Edelman further objects to this Request to the extent it seeks documents and information equally available to Defendant, as such information is publicly accessible through publicly available searches. Consequently, Edelman will not

2

produce documents related to this Request

Following the June 18, 2025, pre-motion conference, Edelman agreed to produce publicly available litigation documents and arbitration pleadings but refused to produce cease-and-desist letters and arbitration awards. On July 2, 2025, Mariner moved to compel the production of all cease-and-desist letters, and all arbitration awards responsive to RFP No. 3. The motion is now ripe, and the Court is prepared to rule.

## II.     Legal Standard

Feb. R. Civ. P. 26(b) governs the scope of discovery and states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

To be discoverable, the information sought must be nonprivileged, relevant, and proportional to the needs of the case. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

Pursuant to Fed. R. Civ. P. 37, a party may move the Court for an order compelling answers to interrogatories and requests for production of documents. If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

3

*Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011). *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections). Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request. *Id.* Relevancy determinations are generally made on a case-by-case basis. *Id.*

### III. Analysis

Mariner argues that the cease-and-desist letters and arbitration awards are relevant to Edelman's trade secret claims and are also relevant to the analysis conducted by Plaintiffs' expert. Edelman contends that the document request is not relevant and raises confidentiality concerns.[2] The Court will first address the relevancy of the requests followed by whether any such confidentiality concerns are a barrier to production.

First, Mariner argues that RFP No. 3 is relevant because the documents tend to show the "reasonable efforts" Edelman has taken to protect their trade secrets, which is an element of a trade secret claim. Edelman objects to that contention stating "[t]here is no authority for the proposition that a trade secret owner must file suit against each and every individual that may have misappropriated its trade secrets in order to establish 'reasonable measures[].'" Doc. 102, at 7.

Under the Defend Trade Secrets Act ("DTSA"), a plaintiff must demonstrate "(1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret

---

[2] Edelman also raised several other objections in their response to RFP No. 3 to include that it is overbroad, unduly burdensome, and disproportionate to the needs of the case. Those objections were not raised in their brief. "Objections initially raised but not asserted in the objecting party's response to a motion to compel are deemed abandoned." *Booth v. Davis*, No. 10-4010-RDR, 2014 WL 3542059, at *1 (D. Kan. July 17, 2014). The Court thus considers those objections abandoned and it will not consider them further.

implicates interstate or foreign commerce."[3] *Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1087 (10th Cir. 2025) (quoting *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023)). To qualify as a trade secret, (1) the owner must have "taken reasonable measures to keep such information secret," and (2) the information must derive "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" *Id.* (quoting 18 U.S.C. § 1839(3)). *See also Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1215 (D. Kan. 2022) (articulating similar standard under the Kansas Uniform Trade Secrets Act). Under both the DTSA and KUTSA, whether certain information qualifies as a trade secret is a question of fact. *Double Eagle Alloys, Inc.*, 134 F.4th at 1088; *Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 86 F. Supp. 2d 1102, 1106 (D. Kan. 2000).

Here, the Court notes that the only documents at issue are cease-and-desist letters and arbitration awards. The cease-and-desist letters are relevant to Edelman's trade secret claims.[4] As stated above, to prevail on a trade secret claim, a party must take "reasonable measures to keep such information secret". *Double Eagle Alloys, Inc.*, 134 F.4th at 1087. Reasonable measures to protect trade secrets may include pursuing litigation through lawsuits, arbitrations, and/or sending cease-and-desist letters to those who are allegedly engaged in misappropriation. Measures that Edelman implemented to protect its trade secrets bear on central issues in this case. These include any cease-

---

[3] The elements to establish a claim under the Kansas Uniform Trade Secrets Act ("KUTSA") are nearly identical to its federal counterpart. *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1211 (D. Kan. 2022). The elements required to establish the claim are: (1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret; and (3) the individuals acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means. *Id.* Given the similarities between the federal and state law claims for trade secret misappropriation, the Court will primarily refer to the federal statute (i.e., the Defend Trade Secrets Act).

[4] The Court does not include arbitration awards in this part of the analysis. It does not find arbitration awards to be directly relevant to a trade secret claim. However, as explained below, it is relevant to Plaintiff's expert analysis.

and-desist letters it sent to offending parties. *See Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 20-2161-JWB-TJJ, 2020 WL 7770931, at *6-7 (D. Kan. Dec. 30, 2020) (finding that documents which show reasonable efforts to maintain secrecy of a trade secret are relevant to the KUTSA) ; *see also MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL-DJW, 2007 WL 3274800, at *6-7 (D. Kan. Nov. 6, 2007) (compelling responses to interrogatories regarding "efforts taken to maintain secrecy of alleged trade secrets"). This is particularly true when the existence of a trade secret is question of fact. *Id.* at 1088. *See also Oppenheimer Fund, Inc.*, 437 U.S. at 351 (stating that relevance is to be construed broadly).

Despite relevance being broadly construed, Edelman argues that "cease and desist letters are akin to settlement agreements and thus, not relevant." The Court disagrees. Edelman does not provide any authority to support its assertion. Moreover, there are certainly distinctions between settlement agreements and cease-and-desist letters. Settlement agreements require the consent of all parties involved and are typically confidential in nature and dispositive of a case. Cease-and-desist letters, on the other hand, are usually delivered before the opposing side has had an opportunity to respond and are demands to stop a certain conduct or behavior. The Court does not find cease-and-desist letters to be akin to settlement agreements and agrees that those letters may tend to show reasonable efforts to preserve a trade secret. Mariner is entitled to conduct discovery which bears on essential elements of a trade claim and whether Edleman has taken reasonable steps to protect any information it alleges is a trade secret. The District Judge may determine issues of admissibility at trial, but given the broad scope of discovery, the Court finds that the cease-and-desist letters are relevant to Edelman's trade secret claims.

As to the arbitration awards, the Court finds those relevant to the analysis conducted by Edelman's damages expert, David Bones. Mr. Bones calculated Edelman's "but-for" attrition rate by only including individuals who adhered to the terms of their employment agreements. Mariner

6

argues that it is entitled to "any documents which support or negate Mr. Bones' presumptions, even if Mr. Bones chose not to consider those documents." Doc. 101, at 8. Edelman contends that the arbitration awards do not "conclusively establish whether planners complied with their contractual obligations." Doc. 102, at 4.

In this case, the outcome of previous arbitrations (i.e., arbitration awards) may be indicative of whether an individual breached the terms of their employment contract. That information may support or negate certain assumptions Mr. Bones made in his expert report which is relevant to any damages methodology and calculation he may have implemented. While Mr. Bones may not have personally reviewed the arbitration awards and instead used information given to him directly from Edelman, Mariner is still entitled to information which supports the data supplied by Edelman to Mr. Bones. Given the broad scope of discovery, the Court agrees that arbitration awards are relevant to rebut Mr Bones' conclusions. Documents which support or negate presumptions Mr. Bones made in his expert report bears on the issues in the case. Particularly when those presumptions relate to what financial planners were included in Edelman's "but-for" attrition rate.

Lastly, Edelman argues that "[e]ven if relevant . . . courts must balance the need for disclosure against the harm to confidentiality. Protective orders may not be sufficient to address all risks." Doc. 102, at 8 fn.4. After review of the agreed protective order, the Court finds that it is sufficient to protect any asserted claims of confidentiality. Earlier in this case, the Court previously denied Mariner's motion for a protective order, in part, because the provisions in the protective order adequately protected its interests. *See* Doc. 80. The Court makes the same finding here. Edelman has not made any showing that the documents at issue are so sensitive that the parties' current protective order cannot protect any confidentiality interests. Therefore, the Court orders that Edelman produce all cease-and-desist letters, and arbitration awards responsive to RFP No. 3.

7

8

**IT IS THEREFORE ORDERED** that Mariner's motion to compel, Doc. 100, is **GRANTED**.

**IT IS FURTHER ORDERED** that Edelman must produce all responsive documents by **August 29, 2025**.

**IT IS SO ORDERED.**

Dated August 14, 2025, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge